The Judges Fleming and Tucker (judge Roane not sitting in the cause) pronounced their opinions.
Judge Tucker.
This was a bill brought by the appellee Stras, for a return of premium on the schooner Sophia and her cargo “ at and from Norfolk to Currafoa, with liberty of going to any other island in the West Indies, or any one port on the Spanish Main, and at and from thence back to Rich„ mond
The bill suggests that the schooner, while on her diréct course to Currafoa was chased by an armed vessel, which overtaking her fast, the Captain, to escape being captured, put into the island of St. Thomas, then not far to the leeward, where he arrived in safety; that he was deterred from proceeding to Currafoa from information that the way thither was greatly infested with privateers, so as to render it almost impossible to escape capture. He therefore sold his cargo at St. Thomas’s, and took a return cargo on freight to Norfolk, 'where,he arrived on the 30th of December, 1799, without touching at any port or place in the West Indies, other than St. Thomas’s. There was a condition in the policy for a return of premium in cqse the Sophia should not proceed to a second port; and also for a further return if the property (the cargo) should return in the vessel, and no loss should happen.
The policies contain two other material clauses ; “ first, that it shall and may be lawful for the said vessel in her *415 vovage to proceed and sail to, touch, and stay at any port or places, if thereunto obliged by stress of weather, or other unavoidable accident, without prejudice to that insurance.” Secondly ; “ it was mutually agreed by the parties that no part of the premium should be returned, or abated, on account of an) deviation which shall be made by the owner, or their factors, from the present voyage.”
The sole question then is, was, or was not, the going into St. Thomas’s a deviation ?
If the case stated in the bill be made ouf, there is no ground to call it a deviation; the first recited clause ir die policy expressly providing, that if thereunto obliged by stress of weather, or other unavoidable accident, she might lawfully go into St Thomas’s (or twenty other diff rent places, under the like circumstances) to avoid the danger.(a) The case is expressly within the terms of the policy.
But what is th e proof of this danger, and necessity f Not the complainant’s bill surely! So much of it as relates to this necessity is expressly denied by the answer. There remains then no shadow of proof of such necessity but a paper purporting to be the copy of the Captain’s protest, made ín b. on folic (not St. Thomas’s, nor corroborated by the oaths of his mate and seamen, as is usual when a vessel is forced out of her course into a different port) on the 5th day of February, 1800, near six -weeks after his arrival in Norfolk. Whatever may be the effect of a protest taken in a foreign country', to which not only the master but the mate and mariners of the vessel may make oath immediately after their arrival in a port into which they have been driven by s.ress of weather, or b_y an enemy, according to the ordinary usage in such cases, (on which I mean not to give any opinion,) such a protest as this, taken at so remote a period of time, and in a different port and country irom that wík re the vessel first arrived, after the insurance upon her could operate, appears to me to be entitled 10 no more respect as evidence, in a case of this nature, than any other voluntary affidavit, made by a person respecting any controversy which *416 had happened, or might happen, between any persons whatsoever. Therefore, without relying on the decision in the case of Senat v. Porter, 7 T. Rep. 158. I am decidedly of opinion that this protest is no evidence at all in the pre» sent case. The consequence is, that the complainant has failed to prove his case to have been such as to entitle him to the benefit of that clause of the policy which would have justified his sailing into, and staying at, St. Thomas’s, if the facts stated in his bill had been supported by proper testimony. The case, therefore, falls under the last clause of the policy before recited, by which it was agreed that no part of the premium should be returned or abated on ac» count of any deviation which should be made by the owners, or their factors, from the intended voyage ; unless the description of the intended voyage contained in these words of the policy, viz. “ at and from Norfolk to Currapoa, with liberty of going to any other island in the West Indies, or any one port on the Spanish Main, and at and from thence hack to Richmond.,” will apply to the voyage which has been performed.
Mr. Wickham, for the appellant, contended that the true intent and meaning of the policy was, that the schooner1 might lawfully go to any two ports in the West Indies, of which Currapoa must be one; but that she was not bound to go first to' Curra, go a, but might go first to any other port in the course of the voyage to Currapoa, and then pro- . ceed to Currapoa, front whence she was in that case to return back to Richmond. But the words of the policy do not admit of that construction; for the word thence refers to the last-mentioned description contained-in the policy, viz. any other island in the West Indies, or any one port on the Spanish Main, and at and from thence (i. e. such last-mentioned island or port on the Spanish Main) back to Richmond. The sense is so clear that I am somewhat surprised that so much stress was laid upon that point. The Sophia did not then proceed upon the voyage described in the policy. This was a deviation; by which *417 is meant a voluntary departure, without any necessity, from the usual course of the voyage insured.(a) From the moment this happens the voyage is changed, the contract (of risk) is deierminedi the insurer being discharged irom all subsequent responsibility; yet he is entitled to retain the whole PRKamra; for the effect of a deviation is not to vitiate or avoid the policy, but to determine the risk from the time of the deviation. The proper course of the voyage being once interrupted cannot be resumed in the eyes of the law. The shortness of the time, or of the distance, of a deviation makes no difference as to its effect on the contract. Whether it be for one hour, or a month ; or for one mile, or one hundred, the consequence is the same.(b) The true reason fas it is said) why a deviation discharges , . , the insurance, is not the increase or the risk, but, that the party contracting has voluntarily substituted another voyage for that which was insured.(c) So, here, the Sophia, by returning back from St. Thomas’s (supposing her going into that port was matter of necessity to avoid capture, and therefore justifiable) to Virginia, instead of proceeding to Currafoa, substituted another voyage from that which was insured, which vitiated the policy from that time. So that the underwriters were not only discharged from all future liability, or risk upon the policy, but, also, from the condition of an abatement, or return of premium on any account whatsoever.
But this is not the only deviation that the Sophia made from the intended voyage, if the charges in the bill be evidence against the complainant, or the captain’s affidavit, or protest, as it is called, be admissible evidence in this cause. The voyage intended and insured against was from Norfolk to Currafoa, &c. and back to Richmond. But, instead of returning back to Richmond, the Sophia took in a freight at St. Thomas’s for Norfolk, and there discharged her cargo. It does not appear she ever did return to Richmond: if she did, the taking in a freight, and going into Norfolk to discharge it, was such a deviation, as, from that. *418 nothing which happened before had done so,) dk-charged the policy, by substituting an entirely different re-’ furn voyage from that insured. The cases of Fox v. Black, Townson v. Guyon, and Elliott v. Wilson, cited Marshall, 394. and Park., ibid. 293..; and that of Beatson v. Haworth, cited ibid. 396. and 298. and reported in 6 T. R. 531.; with the case of Clason v. Simmonds, there cited by Judge Lawrence, all going to the same point, are conclusive in my opinion to shew that the taking in a freight for Norfolk, instead of Richmond, was the substitution of 6 different voyage from that insured against, and a voluntary abandonment of the terms and condition of the policy. I am therefore of opinion, that Mr. Stras was not entitled to any return of premium; but that his bill ought to have been dismissed: consequently, that the decree be reversed, and the bill now dismissed.
Judge Fleming.
It is a sound general principle that whi ever comes into a Court of Equity to ask relief against any part of his contract, .ought to shew by the clearest evidence that he has done every thing on his part to entitle him to such relief.
There can be no doubt but the Sophia’s having put into the port of St. Thomas’s, before she arrived at Currapoa, the first destined port of her voyage, was a deviation from her course; which would have been justified, had there been legal evidence that it was to avoid capture by an enemy, as alleged by the appellee; but, there being no such evidence, or of any other justifiable cause, proved, or even alleged, the deviation must have the same effect upon the Insurance as if she voluntarily had gone a hundred leagues out of her direct or usual course. The consequences of such deviation, and the authorities on which they arc founded, have been so fully stated by judge Tucker, that I shall only add my concurrence in the opinion that the decree be reversed, and the bill dismissed with costs.

 See Marrance^Ax^T

 Marshall on Insurance, 392. Park, 294.

 Marshall, ibid.394. Park, ibid. 294.298.

 Marshall, Ibid. 394. 401. Park, 294,